UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**YVONNE LAVENTURE,**

        **Plaintiff,**

v.                                                                                          Case No:  6:12-cv-1877-Orl-40GJK

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

### REPORT AND RECOMMENDATION

Yvonne Laventure (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits.  Doc. No. 1.  Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) rejecting her hand impairment; 2) failing to provide good cause for assigning limited weight to Dr. Stacey Milunic's mental capacity assessment; and 3) failing to account for her moderate limitations in concentration, persistence or pace in his residual functional capacity ("RFC") determination.  Doc. No. 16 at 7-19.  Claimant argues that the matter should be reversed for an award of benefits.  Doc. No. 16 at 11-13.  For the reasons that follow, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

**I.     STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. MDH(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**II.   ANALYSIS.**

    **A.  Step Two – Carpal Tunnel Syndrome.**

Claimant argues that the ALJ misstated the record when considering whether she suffers from a severe hand impairment, namely carpal tunnel syndrome ("CTS"), at step two of the sequential evaluation process. Doc. No. 16 at 13-17.[1] Claimant maintains that the medical evidence of record reveals that her CTS is a severe impairment resulting in functional limitations.

---

[1] See *Phillips*, 357 F.3d 1232, outlining the sequential evaluation process.

*Id*.  The Commissioner does not contest Claimant's argument concerning the severity of her CTS, thus tacitly conceding that the ALJ's determination regarding the severity of Claimant's CTS is not supported by substantial evidence.  *See* Doc. No. 19 at 4-16.  Instead, the Commissioner argues that the ALJ did not err at step two of the sequential evaluation process since he determined that Claimant suffers from other severe impairments (i.e., depression, diabetes mellitus, and a history of polysubstance abuse) and proceeded to consider all of Claimant's impairments, severe and non-severe, when assessing her ability to work.  *Id*. at 5-6.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe."  20 C.F.R. § 404.1520(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits a claimant's ability to perform basic work activities.  *Id*. at § 404.1521(a).[2]  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an claimant's ability to work.  *See Id*. at § 404.1521.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court

---

[2] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment.  *Id*. at § 404.1521(b).

that he or she has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.

A mere diagnosis is insufficient to establish that an impairment is severe.  *See Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id*.  A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on his or her ability to perform basic work activities.  *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987).  However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to properly consider.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001).

The medical evidence of record indicates that Claimant has routinely been diagnosed with CTS.  *See* R. 254, 262, 272, 278, 282, 332, 360.  The record reveals that Claimant underwent CTS surgery on her right hand.  R. 282.  With the exception of one treatment note (R. 334), the medical evidence of record reveals that Claimant has not experienced ongoing issues with her right hand.  *See* R. 254-300; 337-66.  Medical evidence of record reveals that Claimant has reported suffering from pain and numbness in her left hand since May 29, 2008.  R. 262, 278-88, 282, 288, 337-38.  As a result, Claimant's then treating physician, Dr. Kaitlyn Beisecker, prescribed a wrist splint (R. 283), discussed the possibility performing a electromyogram ("EMG") and/or injections (R. 273, 283), and eventually referred Claimant to the physician who performed CTS surgery on her right

hand (R. 273, 279).[3]  Though Claimant reported seeing an orthopedist who believed that "she might need surgery[,]" the record does not contain any record from that physician. R. 338.[4] On September 1, 2010, Claimant's then treating physician, Dr. Milunic, performed an examination of Claimant's left hand noting the following:

> Left palm shows a hyper-keratotic area over the 2nd and 3rd metacarpals which looks like a callus but is exquisitely painful to touch.  The patient states that this is the same pain that has been bothering her.  It is not erythematous or swollen.  Tinels and Phalens signs are negative.  Contracture is not present.

R. 344.  Based on her examination, Dr. Milunic indicated that the exact cause of the pain in Claimant's left hand is unclear, and opined that it "appears to be neuropathic in nature" and "[p]ossibly related to nerve damage from diabetes[.]" *Id.* On December 10, 2010, an examination of Claimant's left hand revealed that her middle and ring fingers had "painful nodules[.]" R. 334.

At step two of the sequential evaluation process, the ALJ considered whether Claimant's CTS is a severe impairment, stating the following:

> <u>The record indicates that the claimant has a history of left [CTS]</u>. However, the record fails to establish objective findings in support of a related diagnosis.  Moreover, a treating physician indicated that the claimant would need a wrist splint and that the claimant would be referred for injections.  There is no indication that the claimant received a wrist splint or underwent injections.  Also, the claimant has never been referred for orthopedic consultation or EMG (Exhibit 3F).  More recently, the claimant was described as having only "left hand pain" of an unclear cause, and not carpal tunnel syndrome. Upon examination in September 2010, the claimant's left hand/wrist was not eryth[ema]tous or swollen and that she exhibited negative Tinels and Phalen's signs (Exhibit 11F).  <u>In the absence of medical and objective findings to establish a diagnosis of [CTS], the [ALJ] finds that this alleged impairment is not medically determinable.</u>

---

[3] There is no evidence that Claimant ever obtained a splint or received injections. *See* R. 3-34, 243-396.

[4] It is not clear whether the orthopedist Claimant reported seeing was the same who performed surgery on her right hand.  *See* R. 338.

R. 48-9 (emphasis added). Accordingly, while the ALJ stated that the record reflects a history of left CTS, the ALJ found that the record was devoid of objective medical evidence "establish[ing] a diagnosis of [CTS,]" and thus concluded that Claimant's alleged impairment of CTS is not medically determinable. R. 49.

Claimant challenges every aspect of the ALJ's determination concerning her CTS, arguing that it is not supported by substantial evidence. Doc. No. 16 at 13-17. Regardless of the merit of Claimant's argument, it ultimately fails for the reasons argued by the Commissioner. "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *Jamison*, 814 F.2d at 588; *see also Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010). Here, consistent with the regulations and applicable law, the ALJ credited Claimant with other severe impairments at step two and proceeded to consider the remaining steps of the sequential evaluation process. R. 48-54. Thus, even if Claimant's CTS should have been identified as a severe impairment, the omission is only reversible error if the ALJ subsequently failed to fully account for any functional limitations arising therefrom. *Wright v. Comm'r of Soc. Sec.*, Case No. 6:12-cv-1640-Orl-31DAB, 2014 WL 982626, at *6 (M.D. Fla. Mar. 12. 2014).

Claimant baldly argues that she has a "hand impairment that causes limitations." Doc. No. 16 at 14. However, Claimant points to no medical or opinion evidence indicating that her CTS or any other hand impairment causes any functional limitations. *See Id*. at 13-17; *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (claimant bears the burden of proving his or her disability). Further, independent review of the medical record does not reveal any evidence that Claimant has functional limitations caused by a hand impairment. *See* R. 243-396. Accordingly,

even if the ALJ erred in finding that Claimant's CTS is not a severe impairment, the error does not warrant reversal since there is no evidence that Claimant has functional limitations caused by her CTS or any other hand impairment. Therefore, it is **RECOMMENDED** that the Court reject Claimant's argument.

### B. Dr. Milunic.

Claimant argues that the ALJ misstated the record when considering Dr. Milunic's mental capacity assessment (the "Assessment"), thus failing to provide good cause for assigning limited weight to the Assessment. Doc. No. 16 at 7-11. Claimant maintains that the Assessment should be accepted as true, and the case be remanded for an award of benefits since the vocational expert ("VE") testified that an individual with the limitations identified in the Assessment would be unable to perform any work. *Id*. at 11-13 (citing *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986)). The Commissioner argues that the ALJ's decision to assign limited weight to the Assessment is supported by substantial evidence. Doc. No. 19 at 6-11.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

"'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 269 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240-41). Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records.

The medical evidence of record indicates that Claimant suffers from depression, and has a history of hearing voices, suicidal ideation, and cutting. R. 254-300, 332-66. Though Claimant voluntarily sought counseling for her depression in May 2009 (R. 249-52) and repeatedly expressed an interest in continuing counseling thereafter (R. 254, 337, 352), there is no evidence, beyond her stated interest in continuing counseling, that she actively sought counseling for her depression or that her treating physicians referred her to mental health treatment (R. 254-277, 332-66).[5] Instead, the medical evidence of record indicates that Claimant's depression has primarily been treated via medication. *See* R. 254, 288, 337, 361.

Dr. Milunic, a general practitioner, began treating Claimant in July 2010, and treated her on at least three (3) occasions thereafter. R. 332-56. Accordingly, Dr. Milunic qualifies as a treating physician. *See* 20 C.F.R. § 404.1502 (defining a treating physician as the claimant's "own

---

[5] There is no evidence that Claimant was unable to attend counseling for financial reasons. *See* R. 243-396.

physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]"). In her September 20, 2010 Assessment, Dr. Milunic opines that Claimant has marked limitations in her ability to: 1) perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; 2) sustain an ordinary routine without supervision; 3) work in coordination with or in proximity to others without being distracted by them; 4) complete a normal workday without interruptions from psychologically based symptoms; 5) complete a normal workweek without interruptions from psychologically based symptoms; 6) interact appropriately with the general public; 7) accept instructions and respond appropriately to criticism from supervisors; and 8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. 328-29. Dr. Milunic opined that Claimant has moderate limitations in her ability to: 1) maintain attention and concentration for extended periods; 2) perform at a consistent pace with a standard number and length of rest periods; 3) respond appropriately to changes in the work setting; and 4) set realistic goals or make plans independently of others. R. 328-30. Finally, Dr. Milunic opined that Claimant has slight limitations in her ability to: 1) remember locations and work-like procedures; 2) understand and remember very short and simple instructions; 3) understand and remember detailed instructions; 4) carry out very short and simple instructions; 5) carry out detailed instructions; 6) ask simple questions or request assistance; 7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and 8) be aware of normal hazards and take appropriate precautions; and 9) travel in unfamiliar places or use public transportation. *Id*.

At step four of the sequential evaluation process, the ALJ determined that Claimant has the following RFC:

> [L]ift and carry up to 30 pounds occasionally, stand for an hour at a time, sit for 45 minutes at a time, requires alternating positions at will in an 8-hour workday, and can work an 8-hour workday. In addition, the claimant requires unskilled work tasks that can be learned within 30 days, requires routine repetitive tasks that do not require precise attention to detail, should avoid significant interaction with others in that she should avoid sales and teamwork and if others are around, they would work independent of her, and she of them.

R. 50. In reaching this RFC, the ALJ considered the Assessment, explaining that:

> [I]t is inconsistent with Dr. Milunic's examination findings, particularly in October 2010, when Dr. Milunic stated that the claimant was feeling okay with her medications, was in no distress and was awake and alert, and remained "stable" (Exhibit 11F, pages 7 and 8). The [ALJ] also notes for the record that if the claimant's symptoms were so severe, presumably, Dr. Milunic would have referred the claimant to a mental health specialist. There is also no indication in the notes from Dr. Milunic or any other examining physician from Family Health Center were alarmed by claimant's psychological presentation or complaints.

R. 52. Accordingly, the ALJ provided three (3) reasons for assigning the Assessment limited weight: 1) the Assessment was inconsistent with Dr. Milunic's treatment records, as evidenced by her October 14, 2010 treatment note; 2) the lack of a referral to a mental health specialist; and 3) the lack of "alarm" from her treating physicians about her psychological issues and complaints. *Id*.

The ALJ's reasons for assigning limited weight to the Assessment neither misstate nor mischaracterize the record. As noted by the ALJ, the medical evidence of record reveals that Claimant's treating physicians, despite Claimant's reported struggles with depression, never referred her to a mental health specialist or expressed great alarm with respect to her psychological issues and complaints. *See* R. 254-300; 332-66. Instead, Claimant's treating physicians primarily addressed Claimant's depression with medication, which often yielded positive results (*See* R. 254, 288, 337, 361), and by encouraging her to attend mental health counseling (R. 263). This

seemingly conservative treatment stands in stark contrast to the severe limitations contained in the Assessment. Further, Dr. Milunic's Assessment, as the ALJ notes, is generally inconsistent with her own treatment notes, which, despite their diagnosis of severe depression, generally reveal that Claimant is not as limited as noted in the Assessment and has been responding positively to medication. R. 332-56; *see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citations omitted). In light of the foregoing, the undersigned finds that the ALJ's reasons for assigning limited weight to the Assessment are supported by substantial evidence, and together constitute good cause to assign the Assessment less than significant weight. *E.g.*, *Edwards*, 937 F.2d at 584 n.3 (where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as the finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision). Accordingly, it is **RECOMMENDED** that the Court reject this argument.

### C. Concentration, Persistence and Pace.

Claimant argues that the ALJ's hypothetical to the VE did not adequately reflect her moderate limitations in maintaining concentration, persistence and pace. Doc. No. 16 at 17-19 (citing *Winschel*, 631 F.3d 1176). Since the ALJ relied on the VE's testimony in response to the hypothetical to find that there are jobs in the national economy which she can perform, Claimant contends that the ALJ's decision is not supported by substantial evidence. *Id*. at 17-19. The Commissioner argues that the ALJ's hypothetical accounted for Claimant's limitations in maintaining concentration, persistence and pace, because the medical evidence demonstrates that Claimant can perform unskilled work and routine, repetitive tasks despite such limitations. Doc.

No. 19 at 11-16 (citing *Winschel*, 631 F.3d 1176; *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869 (11th Cir. 2011)).

At step five of the sequential evaluation process, the Commissioner bears the burden to show that, in light of the claimant's RFC and other factors, there exist a significant number of jobs in the national that the claimant can perform. *Winschel*, 631 F.3d at 1180; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If such jobs exist, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination based on the VE's response to hypothetical questions that contain the claimant's limitations. *See Winschel*, 631 F.3d at 1180.

For the VE's testimony to constitute substantial evidence, the ALJ's hypothetical question need not include "each and every symptom of the claimant," but must include "all of the claimant's impairments." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). In *Winschel*, the Eleventh Circuit held that if a claimant is found to suffer moderate limitations in concentration, persistence and pace, the ALJ must either "indicate that medical evidence suggested [that claimant's] ability to work was unaffected by [those] limitation[s]," or include those limitations, either explicitly or implicitly, in the hypothetical question(s) posed to the VE. *Winschel*, 631 F.3d at 1181. Since *Winschel*, the Eleventh Circuit has recognized that a hypothetical question could sufficiently account for moderate limitations in concentration, persistence and pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite such limitations. *See, e.g., Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th

Cir. 2012); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 634-35 (11th Cir. 2011); *Jarrett*, 422 F. App'x at 871-72.

At step three of the sequential evaluation process, the ALJ found that Claimant had moderate limitations in maintaining concentration, persistence and pace. R. 49-50. During the hearing, the ALJ posed the following hypothetical to the VE:

> [A]ssume you have an individual who can lift up to 30 pounds occasionally, can stand for an hour at a time, can sit for 45 minutes at a time such that she would need a sit stand option to do an eight hour work day. But with an eight hour - - with sit stand she can work eight hours for purposes of this hypothetical provided that the job is unskilled, that [it] can be learned within 30 days. It's routine, repetitive, not requiring precise attention to detail. This job would not require significant interaction with others, and by that I mean no sales, no team work. There could be others around, but they would be working independently of her and she would be expected to work independently of them.

R. 28-9. The limitations in the hypothetical are similar to those in the ALJ's RFC determination. *Compare* R. 28-9 *with* R. 50. Given these limitations, the VE testified that Claimant could not perform her past relevant work, but could work as a "small products assembler," an "electrical accessories assembler," and a "small products assembler two." R. 29-30. Based on the VE's testimony, the ALJ found that Claimant can perform other jobs in the national economy, and is not disabled. R. 53-4.

The ALJ did not comply with the standard set forth in *Winschel* when addressing Claimant's moderate limitations in concentration, persistence and pace. In his decision, the ALJ provides a detailed synopsis of the medical and opinion evidence of record. R. 51-2. In doing so, the ALJ notes the "record contains" the opinion of non-examining psychological consultant, Dr. Philip Walls, who, despite finding Claimant suffered moderate limitations in concentration, persistence and pace, opined that she is able to understand and carry out tasks of ordinary

complexity, complete a normal workday and workweek, adapt to changes in routine, accept supervision, tolerate superficial contact with small numbers of coworkers, and would have substantial limitations in her ability to interact with public. R. 303-05. While these findings are generally consistent with the ALJ's RFC determination (*Compare* R. 50 *with* R. 305), it is not clear whether the ALJ agreed with or relied on Dr. Walls' opinions in rendering his RFC determination since he failed to assign any weight to Dr. Walls' opinions (*See* R. 52). *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."); *Cf. Scott*, 495 F. App'x at 29 (finding ALJ appropriately accounted for Claimant's moderate limitations in concentration, persistence and pace by "concur[ing] with and adopt[ing]" the opinions of two state agency mental health consultants who opined that Claimant could perform simple unskilled work despite his psychological problems); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) (same). In addition to failing to weigh Dr. Walls' opinion the ALJ failed to expressly find what work Claimant can do despite her limitations in maintaining concentration, persistence and pace. R. 52. On this record, the Court cannot conclude that the ALJ implicitly accounted for the resulting limitations in his hypothetical question to the VE. *Winschel*, 631 F.3d at 1179, 1181. Accordingly, it is **RECOMMENDED** that the Court accept Claimant's argument and remand the case for further proceedings.

### D. Award for Benefits.

Since reversal is necessary, the Court must address Claimant's request that the case be remanded for an award of benefits. Doc. No. 16 at 11-13, 19-20. Reversal for an award of benefits is only appropriate either where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, or where the Claimant has suffered an injustice. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (disability beyond a doubt warrants award of

benefits); *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). Here, remand is recommended based on the ALJ's failure to account for Claimant's moderate limitations in concentration, persistence and pace in his hypothetical question to the VE. The record in this case does not establish that Claimant is disabled beyond a doubt or that Claimant has suffered an injustice. Accordingly, it is **RECOMMENDED** that the Court reject Claimant's request to remand for an award of benefits.

### III.  CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Court:

1. **REVERSE** and **REMAND** the final decision of the Commissioner for further proceedings; and

2. Direct the Clerk to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 21, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record

The Honorable Peter V. Train
Administrative Law Judge

c/o Office of Disability Adjudication and Review
8th Floor
2 North 2nd Street
Harrisburg, PA 17101